# UNITED STATES DISTRICT COURT
for the
### EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

**Information associated with
MANOFFAITH4REAL09@YAHOO.COM that is stored
at premises controlled by Yahoo!**

Case Number: 11 - M - 498

## APPLICATION & AFFIDAVIT FOR SEARCH WARRANT

I, David R. LaMonte, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A**

located in the Eastern District of Wisconsin there is now concealed: **See Attachment B.**

The basis for the search warrant under Fed. R. Crim. P. 41(c) is which is (check one or more):

✓ evidence of a crime;
✓ contraband, fruits of a crime, or other items illegally possessed;
❏ property designed for use, intended for use, or used in committing a crime;
❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

Title 18, United States Code, Sections 470, 472, and 473.

The application is based on these facts:

✓ Continued on the attached sheet, which is incorporated by reference.
❏ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Applicant's signature
Name and Title: David LaMonte, Special Agent

Sworn to before me, and signed in my presence.

Date September 13th, 2011 at 1:35 PM

City and state: Milwaukee, Wisconsin

Judge's signature
THE HONORABLE WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
*Name & Title of Judicial Officer*

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF WISCONSIN.

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
MANOFFAITH4REAL09@YAHOO.COM
THAT IS STORED AT PREMISES
CONTROLLED BY YAHOO!

Case No. 11- M - 498

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **David R. LaMonte,** being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for
information associated with a certain account that is stored at premises owned, maintained,
controlled, or operated by Yahoo!, an e-mail provider headquartered at 701 First Avenue,
Sunnyvale, CA 94089.  The information to be searched is described in the following paragraphs
and in Attachment A.  This affidavit is made in support of an application for a search warrant
under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Yahoo! to disclose to
the government records and other information in its possession pertaining to the subscriber or
customer associated with the account, including the contents of communications.

2.      I am a Special Agent with the United States Secret Service, and have been since
2008.  From 2007 to 2008, I served as a Police Officer in Orland Hills, Illinois. I graduated from
The John Marshall Law School in 2008 and am currently a member in good standing of the
Illinois State Bar.  During my time with the Secret Service, I have received specialized training
in the enforcement of laws concerning the uttering and distribution of counterfeit Federal

Reserve Notes. I am certified as an expert in the detection of counterfeit currency and have participated in numerous investigations relating to such violations.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 470, 472, and 473 have been committed by Nimionwantue M. Idahar, aka Mike. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

### PROBABLE CAUSE

1.     Beginning in 2010, the United States Secret Service began investigating a number of individuals, led by Anthony Lee, who obtained high quality counterfeit (CFT) Federal Reserve Notes (FRN) from a suspected source of supply in Nigeria. The group then recruited numerous individuals to assist in uttering the notes at various stores around the Eastern and Western Districts of Wisconsin and Northern District of Illinois.

2.     The type of CFT FRNs associated with this case bear uniquely identifying numbers and features that allow the Secret Service to track the source of the CFT notes directly to a distributor and ultimately the manufacturer. In this case, the CFT FRNs uttered throughout Wisconsin have been categorized by the Secret Service under the identifying number C-23838,

2

which is a variation of a CFT FRN that was printed on an offset circular printing press. The CFT FRNs repeatedly uttered in the Eastern District of Wisconsin by suspects in this investigation have all been categorized as C-23838, which means they all bear identical numerical features that are attributable to the same printing plates.

3. On August 4, 2011, Lee was arrested pursuant to a Criminal Complaint from the Eastern District of Wisconsin, which alleged that Lee and others conspired to utter counterfeit United States Currency in violation of 18 U.S.C. §§ 371 and 472. Lee was located and arrested at his residence, 520 Chestnut St, Waukegan, IL. During a search incident to arrest, Lee was found to be in possession of two CFT $100 FRNs (C-23838) found in a brown and white envelope, a MoneyGram receipt dated 07/29/11 for a wire transfer of $300, and another MoneyGram receipt dated 07/31/11 for a wire transfer of $300 to Nigeria. The latter receipt was addressed to "Nimionwantue M. Idahor of Nigeria" from "Alex Harris, 515 Lake St, North Chicago, IL 60064, 847-302-7969." Lee later admitted that Alex Harris was one of the many aliases Lee invented for the purpose of sending funds to Nigeria.

4. Lee waived his *Miranda* rights and agreed to be questioned. Lee stated the following, in summary:

* Lee was born in the U.S. Virgin Islands and maintains contacts throughout the world.

* Lee's friend, Caesar LNU, is from Nigeria and possibly resides in the Hyde Park neighborhood of Chicago, IL. Lee has known Caesar for approximately five years. Lee met Caesar through another friend, Marcus LNU, who also resides in Chicago, IL.

3

* In July 2008, Lee received a $100 FRN from Marcus and used it to purchase drinks at a bar. Later that night, Marcus told Lee the FRN was CFT and described it as being "like Monopoly money, only better." Marcus told Lee he had a contact who supplied him with CFT FRNs.

* Approximately one week later, Marcus contacted Lee and told him his CFT FRNs supplier was a Nigerian nicknamed "Mike." Lee could not remember Mike's real name because he stated it was African and very difficult for him to pronounce. Marcus told Lee to contact Mike in order to obtain CFT FRNs.

* Lee's first contact with Mike was through Skype. Mike told Lee he sold CFT FRNs at a rate of $100 genuine for each $300 CFT FRNs. He further stated he sold foreign currencies from throughout the world, including the British Pound and European Euro. All future contacts with Mike were conducted via telephone.

* Mike sent a sample of eight CFT $100 FRNs to Lee, which he delivered through Caesar. In the weeks to follow, Lee and his friends RD and VM, who is currently deceased, uttered the eight CFT $100 FRNs at retail stores throughout the Northern District of Illinois.

* Lee continued to purchase CFT FRNs from Mike over the next three years. Each package he received would contain approximately $6,000 in CFT $100 FRNs. The largest package Lee ever received contained $30,000 CFT FRNs. However, Mike warned him that the batch was discounted because the CFT FRNs were having difficulty passing the iodine counterfeit-detection pen test.

4

\* The packages arrived by various mailing services including the U.S. Postal Service, UPS, and DHL.

\* Anytime Lee needed a new package, he would provide Mike with the location of a new shipping address. Those addresses typically consisted of residences Lee knew to be abandoned, but sometimes he would ask unknowing acquaintances if he could use their residence to receive a package.

\* When Lee ordered a new package from Mike, he would receive instructions to make an installation deposit to a MoneyGram account provided by Mike. Mike rarely discussed the exact sale price of the CFT FRNs and payments were made in installations.

\* When the packages arrived at Lee's predetermined address, the CFT FRNs were always hidden in unsuspecting items, such as clothing, hats, cosmetics, and compact discs.

\* After Lee was arrested for uttering counterfeit by the Gurnee, IL Police Department in July 2008, he never again personally uttered CFT FRNs because he feared prosecution. Instead, he recruited others to utter the CFT FRNs for him, with an arrangement that half of the profits would be returned to him. Lee repeatedly drove other suspects to retail establishments in Eastern and Western Districts of Wisconsin and Northern District of Illinois where they uttered CFT FRNs.

5

5.  Lee obtained counsel and agreed to cooperate proactively with the USSS. He was subsequently indicted on August 16, 2011, for conspiracy to utter counterfeit as well as seven substantive counts of uttering, in violation of 18 U.S.C. §§ 371 and 472.

6.  Lee identified Mike's telephone number as 011-234-805-641-3789, which is an international telephone number originating from Nigeria. He identified Mike's email address as MANOFFAITH4REAL09@YAHOO.COM. On September 6, 2011, the United States Attorney's office for the Eastern District of Wisconsin sent a preservation letter pursuant to 18 U.S.C. § 2703(f) to Yahoo! regarding MANOFFAITH4REAL09@YAHOO.COM.

7.  On August 6, 2011, the USSS, working with the Milwaukee High Intensity Drug Trafficking Area Task Force (HIDTA) established a consensual wire interception of Lee's telephone.

8.  During the following weeks, Lee and Mike had frequent telephone conversations that typically involved negotiations for the purchase of CFT FRNs. Mike directed Lee to facilitate the transaction by identifying an address where he could ship a package containing CFT FRNs as well as when to wire funds to Mike via MoneyGram. In furtherance of the investigation, the Secret Service wired funds to Mike via MoneyGram on August 8, 2011 for $1,100, on August 19, 2011 for $500, and on August 30, 2011 for $800. Mike advised Lee that when he finds an appropriate address to ship the package, Lee should e-mail the address to Mike's e-mail account, MANOFFAITH4REAL09@YAHOO.COM. Mike told Lee that could send as much CFT currency as Lee wished, but Mike expressed concern that Lee may not have the market for such large quantities of CFT FRNs. Furthermore, Mike advised he was interested in possibly

6

visiting the United States in December 2011 and tasked Lee with identifying a female American who would be willing to sponsor Mike's application for a travel visa to the United States.

9. On August 7, 2011, Lee sent an e-mail message to Mike's account, MANOFFAITH4REAL09@YAHOO.COM, which contained an undercover mailing address provided by the Secret Service.

10. On August 10, 2011, Mike responded to Lee's e-mail message from the same e-mail account, MANOFFAITH4REAL09@YAHOO.COM, by providing an e-mail message containing the fictitious names used for the sender and receiver of a package of CFT FRNs. Further, Mike's e-mail message contained a U.S. Postal Service mail tracking number, which Lee was to use for online tracking of the package in transit. It is reasonable to assume that Mike is using this email account for other communications with other individuals involved in violations of 18 U.S.C. §§ 470, 472, and 773.

11. On August 18, 2011, the Secret Service received a parcel from Nigeria that was subsequently searched and found to contain 510 CFT $100 FRNs. The contents of that package included five African wedding hats, one African style shirt, and various compact discs. The CFT FRNs were covertly sewn into the brims of the hats in order to evade potential searches by U.S. Customs and Border Protection.

12. On September 8, 2011, the Secret Service received a parcel from Nigeria that was subsequently searched and found to contain 493 CFT $100 FRNs. The contents of that package were transported in a similar manner to the first parcel and contained similar items of clothing

7

and displayed handwriting bearing a similitude to that written on the first parcel. The CFT FRNs were again covertly sewn into the brims of African wedding hats in order to evade detection.

13.     Mike advised a third package would be sent, but arrangements have yet to be made for delivery of its contents.

14.     In my training and experience as well as in conversations with other Special Agents of the USSS who are experienced with computers and electronic communication systems, I have learned that Yahoo! provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. Yahoo! allows subscribers to obtain e-mail accounts at the domain name yahoo.com, like the e-mail account listed in Attachment A. Subscribers obtain an account by registering with Yahoo! During the registration process, Yahoo! asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Yahoo! subscribers) and information concerning subscribers and their use of Yahoo! services, such as account access information, e-mail transaction information, and account application information.

15.     In general, an e-mail that is sent to a Yahoo! subscriber is stored in the subscriber's "mail box" on Yahoo! servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Yahoo! servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Yahoo!'s servers for a certain period of time.

8

16. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo!'s servers, and then transmitted to its end destination. Yahoo! often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! server, the e-mail can remain on the system indefinitely. Even if the sender deletes the e-mail, it may continue to be available on Yahoo!'s servers for a certain period of time.

17. A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Yahoo!, but may not include all of these categories of data.

18. A Yahoo! subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Yahoo!

19. Subscribers to Yahoo! might not store on their home computers copies of the e-mails stored in their Yahoo! account. This is particularly true when they access their Yahoo! account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

20. In general, e-mail providers like Yahoo! ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and

9

other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

21. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Yahoo!'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

22. In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

23. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

10

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

1. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Yahoo! to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

2. Based on the forgoing, I request that the Court issue the proposed search warrant.

3. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

4. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

5. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

11

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

DAVID R. LAMONTE
Special Agent
United States Secret Service

Subscribed and sworn to before me on _September 13th_, 2011

WILLIAM E. CALLAHAN, JR.
UNITED STATES MAGISTRATE JUDGE

12

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with

MANOFFAITH4REAL09@YAHOO.COM  that is stored at premises owned, maintained,

controlled, or operated by Yahoo!, a company headquartered at 701 First Avenue, Sunnyvale,

CA 94089.

## ATTACHMENT B

### Particular Things to be Seized

**I.** **Information to be disclosed by Yahoo!**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo! Yahoo! is required to disclose the following information to the government for the account/identifier listed in Attachment A:

a. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, deleted e-mails, emails preserved pursuant to a request made under 18 U.S.C. § 2703(f), the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files, and

including any deleted information and any information preserved pursuant to a request made under 18 U.S.C. § 2703(f);

d. All records pertaining to communications between Yahoo! and any person regarding the account, including contacts with support services and records of actions taken.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Sections 470, 472, and 473 have been committed by Nimionwantue M. Idahar, aka Mike, since January 1, 2008, including, for the account/identifier listed on Attachment A, information pertaining to the following matters:

a. The making, dealing, selling, passing, exchanging, transferring, receiving, delivering, and possessing of counterfeit obligations of the United States, as well as payment for such counterfeit obligations.

b. Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

2

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Yahoo!, and my official title is _____. I am a custodian of records for Yahoo!. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Yahoo!, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Yahoo!, and

c.      such records were made by Yahoo! as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                                      Signature